* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
2. Plaintiff was an owner of defendant-employer A. A. Melvin, Inc., formerly Andrew Melvin Logging, at all times relevant to these claims.
3. Forestry Mutual Insurance Company insured A. A. Melvin, Inc., formerly Andrew Melvin Logging, from 1992 to 2006. Plaintiff excluded himself from coverage until April 4, 2004.
4. The following were admitted into evidence before the Deputy Commissioner:
 a. Stipulated Exhibit 1 — Pre-Trial Agreement.
 b. Stipulated Exhibit 2 — Industrial Commission Forms, medical records and bills, plaintiff's discovery responses, and insurance coverage and wage documents. Also submitted was plaintiff's handwritten supplement to Form 18 and plaintiff's letter cancelling his workers' compensation insurance policy.
5. The issues before the Commission are whether plaintiff developed a compensable occupational disease, and, if so, what benefits plaintiff is entitled to receive.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 61 years old. He graduated from high school in 1964 and has no special education or training. Plaintiff has worked as a logger since 1977, when he started the business of Andrew Melvin Logging.
2. In 1992, the business purchased workers' compensation insurance coverage from Forestry Mutual Insurance Company. At that time, plaintiff was covered under his own health insurance and did not elect to be covered under the workers' compensation insurance policy.
3. Plaintiff began to have pain in his left thumb. On November 30, 1998, he sought treatment for his left thumb pain with Dr. S. Lamont Wooten of Eastern Orthopaedic Group, Inc. Plaintiff described his job duties to Dr. Wooten, including using heavy logging equipment that required repetitive punching of buttons with his left thumb. He was diagnosed with traumatic arthritis and received a steroid injection.
4. In his employment, plaintiff operated a piece of logging equipment called a feller buncher, which required the operator to sit in a seat and control various functions with the use of a joystick. The joystick had buttons on top, which were activated by the operator's thumb. The feller buncher had an arm with which the operator could reach out, grab a tree and hold it while a saw blade cut the tree. Operation of the feller buncher required almost constant use of the operator's thumb in punching the joystick buttons throughout the workday. When plaintiff began using the feller buncher, the primary control buttons were on the left joystick, located to the left of the operator's seat.
5. Plaintiff returned to Dr. Wooten on April 15, 1999, January 27, 2000 and January 11, 2001 due to his left thumb pain and received repeated injections in his left thumb. *Page 4 
6. On October 18, 2001, plaintiff saw Dr. Wooten with complaints relating to both thumbs. He stated his left thumb was worse than the right. 7. On April 4, 2004, Andrew Melvin Logging was incorporated and became A.A. Melvin, Inc. Upon incorporating, plaintiff opted to be covered under the Forestry Mutual Insurance Company workers' compensation insurance policy.
8. On December 1, 2006, plaintiff returned to Dr. Wooten with right thumb complaints. Since last being treated on October 18, 2001, plaintiff had switched the primary joystick controls of the feller buncher from the left hand joystick to the right hand joystick.
9. Plaintiff's treatment on December 1, 2006 was more than five years since his last treatment with Dr. Wooten for either thumb. It was also two years and eight months after he became insured under defendant-employer's workers' compensation insurance policy.
10. On December 5, 2006, plaintiff filed a Form 19 relating to his left and right thumbs after speaking with an agent of defendant-carrier. Plaintiff was unsure of how to list the date of occurrence of his occupational diseases on the Form 19. Plaintiff contacted defendant-carrier for advice on answering the "date of occurrence" question. An agent of defendant-carrier advised plaintiff that he should use the date that he first sought treatment for his condition. Based on this advice, plaintiff mistakenly listed January 27, 2000 as his "date of occurrence."
11. Plaintiff refiled a subsequent Form 19 on January 3, 2007. He also filed a Form 18 and a Form 33 on February 20, 2007. Plaintiff also filed a handwritten attachment with the Form 18 which shows that plaintiff filed a claim for both left and right thumbs. Plaintiff was unrepresented by counsel when he completed the forms.
12. Due to his left and right thumbs, plaintiff stopped working on December 29, 2006. Defendant-employer ceased operations the end of December 2006. *Page 5 
13. Plaintiff saw Dr. Wooten again for his left thumb pain on January 29, 2007. Plaintiff opted for surgery on his left thumb, which was performed by Dr. Wooten on January 31, 2007. The surgery consisted of excision of half of the left thumb joint and reconstruction of that joint with a tendon. Dr. Wooten estimated the recovery time following surgery to be four months, with continued improvement through 12 months. Plaintiff's left thumb did improve after surgery, but did not return to normal.
14. At his deposition on August 14, 2007, Dr. Wooten testified that plaintiff has traumatic arthritis to his left and right thumbs. Dr. Wooten felt that these conditions were related to the repetitive motion use or punching of the thumb on the joystick in plaintiff's employment. Dr. Wooten testified that he would prefer that plaintiff not perform repetitive, compressive loads on his thumb with a joystick. Although he did not specifically excuse plaintiff from work after December 29, 2006, Dr. Wooten felt plaintiff's reason for leaving work was consistent with the progression of his disease. Dr. Wooten opined that following plaintiff's left thumb surgery, after 12 months plaintiff would be at the plateau of his progression and that his ability to perform his previous job would be evaluated on a trial basis.
15. Dr. Wooten testified to a reasonable degree of medical certainty and the Commission finds that plaintiff's job either caused or aggravated his traumatic arthritis. Additionally, plaintiff's employment exposed him to a greater risk of contracting traumatic arthritis to his left and right thumbs than the public at large that was not so employed. Dr. Wooten also felt that there would be an increased risk over the general population of developing traumatic arthritis for those in the logging business using joysticks on a repetitive basis.
16. Plaintiff has not reached maximum medical improvement regarding his right thumb but has reached maximum medical improvement regarding his left thumb. Plaintiff *Page 6 
should be permitted to return to Dr. Wooten for assignment of a permanent partial disability rating to his left and right thumbs, if and when such ratings are warranted.
17. Plaintiff has qualified for and is receiving Social Security disability benefits as a result of his total medical and vocational circumstances.
18. Forestry Mutual Insurance Company is the workers' compensation insurance carrier who was on the risk when plaintiff was last injuriously exposed to the hazards of the disease of traumatic arthritis to his left and right thumbs. 19. Although plaintiff was diagnosed with the occupational disease of traumatic arthritis in his left thumb on November 30, 1998 and in his right thumb on October 18, 2001, and may have been informed by competent medical authority of the nature and work-related cause of that disease at that time, the occupational diseases did not render plaintiff incapable of earning wages until December 29, 2006. Therefore, the claim filing requirements of N.C. Gen. Stat. § 97-58 were met when plaintiff filed his Form 19 on January 3, 2007, and a Form 18 and a Form 33 on February 20, 2007.
20. Plaintiff did not give written notice to his employer within 30 days as required by N.C. Gen. Stat. § 97-22. However, since plaintiff was both employee and employer, defendant-employer had actual notice of the condition. Neither defendant-employer nor defendant-carrier have been prejudiced by any delay in plaintiff notifying defendant-employer in writing within the 30 day period, as plaintiff was not insured under defendant-carrier's policy at that time.
21. When plaintiff became insured under defendant-employer's workers' compensation insurance policy on April 4, 2004, defendant-carrier did not require plaintiff to undergo a physical examination or otherwise answer questions about his medical condition. *Page 7 
22. When plaintiff stopped working, he had earned gross wages of $29,700.00 during the preceding 52 weeks. As plaintiff was not paid for one of those weeks in which he was on vacation, it is appropriate and equitable to determine his average weekly wages by dividing his gross wages of $29,700.00 by 51 weeks, which yields an average weekly wage of $582.35 and a compensation rate of $388.25 per week.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease under N.C. Gen. Stat. § 97-53(13). This requires plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles,304 N.C. 44, 283 S.E.2d 101 (1981).
2. In this case, plaintiff's employment caused or aggravated his traumatic arthritis in his left and right thumbs and his job placed him at a greater risk of developing traumatic arthritis than the general public not so exposed. As such, plaintiff sustained a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment *Page 8 
and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982).
4. An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,supra.
5. In the present case, Dr. Wooten testified that he expected plaintiff to recover from his left thumb surgery within four months, or by May 31, 2007. However, after May 31, 2007, plaintiff did not show that he was unable to obtain employment after a reasonable effort or that it was futile for him to seek employment because of other factors. He was capable of some work and no doctor took him out of work.Demery v. Perdue Farms, Inc., supra.
6. As a result of his compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $388.25 per week beginning December 29, 2006 and continuing until May 31, 2007. N.C. Gen. Stat. § 97-29. *Page 9 
7. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
8. As a result of his occupational diseases, plaintiff is entitled to a permanent partial disability rating of his left thumb, and, if such a rating is warranted, defendants shall pay plaintiff his permanent partial disability rating in accordance with N.C. Gen. Stat. § 97-31(1).
9. Upon reaching maximum medical improvement for his right thumb, plaintiff shall be entitled to return to Dr. Wooten for assignment of a permanent partial disability rating to his right thumb, and, if such a rating is warranted, defendants shall pay plaintiff his permanent partial disability rating in accordance with N.C. Gen. Stat. § 97-31(1).
10. Plaintiff's claim is not barred by failure to give written notice of injury within 30 days, in that defendant-employer had actual knowledge of the injury and was not prejudiced by the delay. N.C. Gen. Stat. §§ 97-22; 97-58.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fee provided below, defendants shall pay temporary total disability to plaintiff at the rate of $388.25 per week from December 29, 2006 until May 31, 2007. Any compensation that has accrued shall be paid in a lump sum. *Page 10 
2. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
3. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
4. Plaintiff shall be entitled to return to Dr. Wooten for assignment of a permanent partial disability rating to his left thumb, and, if such a rating is warranted, defendant shall pay plaintiff his permanent partial disability rating in accordance with N.C. Gen. Stat. § 97-31(1).
5. Upon reaching maximum medical improvement for his right thumb, plaintiff shall be entitled to return to Dr. Wooten for assignment of a permanent partial disability rating to his right thumb, and, if such a rating is warranted, defendant shall pay plaintiff his permanent partial disability rating in accordance with N.C. Gen. Stat. § 97-31(1).
6. Defendants shall bear the cost of this action.
This 18th day of June, 2008.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 11 
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1